STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-07-65
JM'J- KEN - 4/18/2002

ROBERT D. MOORE

Petitioner

v.

DECISION AND ORDER

STATE OF MAINE BOARD OF
DENTAL EXAMINERS,

Respondent

Before the court is petitioner's M.R. Civ. P. 80C petition for judicial review of the final agency action of the State of Maine Board of Dental Examiners.

## Facts

By written decision dated October 12, 2007, the Board of Dental Examiners (the Board) found that petitioner had violated 32 M.R.S.A. § 1077(2)(F)[1] by violating the standard of professional behavior established in the practice of dentistry by providing dental care that failed to meet minimum accepted standards of practice. Additionally, the Board found petitioner in violation of 32 M.R.S.A. § 1077(2)(E)[2] for failure to provide dental care that meets the minimum accepted standards of practice. The hearing held on September 14, 2007 was pursuant to a complaint filed by a patient, NF.

---

[1] "Unprofessional conduct. A licensee is considered to have engaged in unprofessional conduct if the licensee violates a standard of professional behavior that has been established in the practice for which the licensee is licensed."

[2] "Incompetence in the practice for which the licensee is licensed. A licensee is considered incompetent in the practice if the licensee has:
  (1) Engaged in conduct that evidences a lack of ability or fitness to perform the duties owed by the licensee to a client or patient or the general public; or
  (2) Engaged in conduct that evidences a lack of knowledge or inability to apply principles or skills to carry out the practice for which the licensee is licensed."

Petitioner is a 58-year-old solo-practitioner dentist practicing in Bangor. NF is a 47-year-old registered nurse employed in the field of infection control. NF was referred to petitioner for the extraction of a tooth. Petitioner, after concluding that the tooth was non-restorable, extracted it.

Petitioner "perforated NF's sinus bone during the surgery which resulted in an oroantral communication or opening between the oral cavity and the maxillary sinus." It is petitioner's treatment of NF subsequent to perforating the sinus bone that forms the basis for the Board's finding of unprofessional conduct and incompetence. NF sought a second opinion and was referred to Dr. Jeffrey Fister (R. Tr. pt. 1 at 20.) Dr. Fister was at the time a member of the Board. NF made the complaint on the recommendation and encouragement of Dr. Fister. That complaint details her discussion with Dr. Fister informing thereby the entire Board of his recommendation. (R. at Index 32 tab 2, p. 9.) While Dr. Theriault, the original complaint officer recused herself, the complaint was certainly part of the record adjudicated by the Board. With respect to Dr. Fister, it stated:

> "The first question he asked me was, did you sign a consent about the possible complications? I said no. He then asked, were you told about the complications? I said no. Then he asked did Dr. Moore take x-rays?...I told him that Dr. Moore had me packing with gauze...that's when Dr. Fister said, STOP packing with the gauze!...You should not be packing at all. How do you know you're getting all of the pieces out??!! He said that packing could become lodged up in there and the area can't drain...Then I said, Dr. Fister,...I want to know what you think I should do...Dr. Fister said, since you've asked me I would recommend you file a complaint with the Maine Board of Dental Examiners." *Id.*

Dr. Fister testified at the hearing being called as an expert witness by the attorney prosecuting the claim against petitioner. (R. Index 1-31 tab 6; Tr. pt. 1 at 299.) Dr. Fister's testimony reveals multiple instances in which he compared the work of petitioner with what he would have done, at one point being told by the hearing officer,

"You've got to stop saying what you would have done and you've just gotta testify to what you saw..." (R. Tr. pt. 1 at 311.) Further, in his closing argument, the AAG stressed the importance of weighing the relative credibility of witnesses and compared the work of petitioner and Dr. Fister, "had an appropriate radiograph been taken, such as Dr. Fister's, the root tip would have been visualized and the patient conformed, hopefully." (R. Tr. pt. 2 at 276-29.) Dr. Fister's testimony had an effect on the decision of at least Dr. Higgins, who had earlier made a sarcastic comment in reference to Dr. Fister recusing himself from the board for this case. (R. Tr. pt. 1 at 115-16; pt. 2 at 309-10.) Further, Dr. Moyer, the Board's only other oral surgeon besides Dr. Fister, recused himself. As a result, petitioner's case, which focused on the standard of care to be given by an oral surgeon was heard by a Board comprised of no oral surgeons. (R. Index 34 at 6.)

## Standard of Review:

"An administrative process may be infirm if it creates an intolerable risk of bias or unfair advantage." *Zegel v. Board of Social Work Licensure*, 2004 ME 31, ¶ 16, 843 A.2d 18, 22.

## Discussion:

Petitioner argues that Dr. Fister's pre-complaint involvement and strong encouragement, and the Board's knowledge of his involvement and encouragement, make it highly probable that his case was heard by a tribunal susceptible to a risk of bias or unfairly predisposed against him.

"A combination of investigative and adjudicatory functions in administrative proceedings generally does not violate due process absent some further showing of bias or risk of bias." *Id.* n. 3 (citing *Withrow v. Larkin*, 421 U.S. 35 (1975)). However, the Law

Court has said in dictum, "the combination of investigator, prosecutor and sitting *member of the adjudicatory panel*, even if ostensibly a nonparticipating member, creates an intolerably high risk of unfairness." *Id.* (quoting *Gashgai v. Bd. of Registration in Med.*, 390 A.2d 1080, 1082 n. 1 (Me. 1987) (emphasis added)). While Dr. Fister was not himself the investigator or prosecutor, his role as a sitting board member combined with his pre-complaint treatment of NF, his role in advising NF to file a complaint, his expressed opinions of the efficacy of the complaint as seen by the Board, and his designation as an expert witness in front of a Board on which he sat, combine to create an intolerable risk of bias or unfairness.

In *Zegel* the Court held that it "need not determine whether the process here crossed the line because the error, if any, was harmless." *Id.* at ¶ 17, 843 A.2d at 22. This court cannot say that error in this instance was harmless. The gloss put on the facts by the Board was impacted by the knowledge that an important and influential member of the Board believed this case to constitute a violation, treated the patient, acted as a witness in front of the Board, and was the person who recommended to the petitioner that she file a complaint to the Board. Buttressing this risk is that the Board was acting without an oral surgeon. Had Dr. Fister not been involved in treatment and had not advised NF to file a complaint, his expertise would have very likely been an invaluable asset to the Board's deliberations. Given the circumstances, the risk of a tribunal operating without the benefit of their highly knowledgeable colleague giving more significant weight to a complaint with the imprimatur of *that very colleague* seems all too great.[3]

---

[3] An example of a close question where Dr. Fister's presence in the case may have tipped the balance was the choice of the Board with regards to how to evaluate the testimony of Dr. Mark Zajkowski. Petitioner cites this testimony in demonstration that he did not violate the acceptable standard of care:

Respondent assures the court that the individuals on the Board are of the utmost integrity and bring objectivity to their conduct of Board actions. The court does not disagree with this contention nor does it intend through its decision to question the professionalism of individuals on the Board. *See In Re Maine Clean Fuels, Inc.*, 310 A.2d 736, 750 (Me. 1973). Nonetheless, this court determines the circumstances of this action intolerably risked bias and unfairness. Respondent argues that petitioner's burden is

Q: Based on your understanding of the testimony and review of the chart do you have an opinion on whether or not Dr. Moore was looking out for the best interest of the patient?
A: I believe that he was.
Q: Do you believe that his treatment in all respects demonstrated professionalism?
A: Yes.
Q: Did he in any way engage in any unprofessional conduct in your opinion?
A: I believe he did not.
Q: Did his treatment in all respects, was it consistent with the Dental Practice Act?
A: I believe it was.
(R. at tab 35B, p. 190-191.)
About this testimony, the respondent's decision stated:

> Dr. Zajkowski testified as an expert for the licensee. Although he stated that none of the complained of acts listed in the Notice of Hearing fell below the standard of care, he did acknowledge that the written post-operative instructions regarding NF did not meet the standard of care for oroantral extractions in the absence of verbal ones. Although he testified that it was not below the standard of care to fail to provide written instructions following those surgeries, all of the four oral surgeons in his practice group provide the instructions in writing since a person accompanying the patient may forget to tell them to the patient or may confuse them. This witness was also unable to locate in his research any authority supporting the packing of a dry oroantral socket with dry socket packing as was done in this instance.

(R. at tab 29, p. 5-6.)

The Board seemed instead to favor the testimony of Dr. Jeffrey B. Doss:

> ...Dr. Doss voiced several opinions regarding the standard of care in this matter which the Board concludes are correct. He additionally stated that an oronatral opening can cause risk of serious, even fatal infection to the sinus cavity. The opening may allow bacteria to freely flow from the mouth to the sinus cavity both through the air as well as in saliva, food particles, etc. The sinus may lose its ability to cleanse itself and an individual's eyes could be harmed as well. This expert further testified that a dentist must insure that he has removed the entire tooth during an extraction by looking at the tooth and its remnants and, if unsure, by taking the appropriate diagnostic x-ray which was not done in this matter. If pieces of the tooth remain, infection may result or imperil future dental implants. Dr. Moore's x-ray failed to fully include the subject area and a second x-ray such as that taken by Dr. Fister would have disclosed the presence of the root tip.
> The Board further agrees with Dr. Doss's opinion that the failure to use radiopaque packing fell below the standard of care since packing which may caue infection could accidentally enter the sinus cavity and not be discovered by x-ray if non-radiopaque packing was utilized. Additionally, contrary to Dr. Moore's testimony, this type of packing is extremely effective in preventing pain.

(R. at tab 29, p. 5.)

"to prove that each and every member of the Board could not act without impartiality." (Resp.'s Br. at 37.) Respondent invents this insurmountable burden out of thin air, and mistakes this court's judgment to be an assessment of the ethics of members of the board. As stated above, the process is infirm if the context creates an "intolerable risk of bias or unfair advantage." *Zegel*, ¶ 16, 843 A.2d at 22. These risks were not effectively cured by the hearing officer asking questions compose by the petitioner to test bias and concluding that "all of the board members stated that they could conduct themselves in a fair and unbiased manner and would not give Dr. Fister's testimony any more weight than they would give any other dentist that's going to testify at hearing." (R. Tr. pt. 1 at 111; R. Index 33 tab 31.) The genie was for all intents and purposes out of the bottle.

While the court is aware that the requirements of 'fair play' in the administrative context are less than those required in the courts, "something more than unfettered administrative action" is required. Fairness is to be determined "from case to case in accordance with differing circumstances." *Maine Clean Fuels, Inc.*, 310 A.2d at 746 (quoting *Federal Communications Comm'n v. WJR, The Goodwill Sta.*, 337 U.S. 265 (1949). These are circumstances that risked intolerable bias and unfair disadvantage againt the petitioner.

The entry is

> The decision of the Maine Board of Dental Examiners is VACATED and REMANDED for a new hearing in front of a tribunal not susceptible to the risks of bias or unfairness articulated in this decision.

April /8 2008

Justice Joseph Jabar

Date Filed ___10/11/07___      Kennebec _____      Docket No. __AP07-65_____
                                 County

Action __Petition for Review_____
              80C

# J. JABAR

___Robert D. Moore, DDS, MD___      vs.      ___Board of Dental Examiners___

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| James E. Belleau, Esq.<br>95 Main Street<br>P.O. Box 3200<br>Auburn, Maine 04212-3200 | Dennis Smith Esq. AAG<br>6 State House Station<br>Augusta,Maine 04333 |

| Date of Entry | |
|---|---|
| 10/11/07 | Petition for Judicial Review of Final Agency, s/Belleau, Esq. |
| 10/23/07 | 10/22/07:Appearance and Statement of Position Pursuant to 5 M.R.S.A.11005. Procedural History. filed by Dennis Smith AAG |
| 11/13/07 | 11/9/07: Certification of Administrative Record filed by T.Johnson Board Clerk. The file is in the Vault. |
| 12/5/07 | Consented To Motion To Modify Record of Agency Proceedings, filed 12/4/07. s/Belleau, Esq. |
| 12/17/07 | Notice and Briefing Schedule mailed to attys. of record. |
| 12/19/07 | Brief of Robert moore, DDS in Support of his Petition for Review, filed. s/Beaudin, Esq. |
| 1/15/08 | Motion to Enlarge Time for Filing the Brief of Respondent Pursuant to M.R.CIV.P. 7&80C(g), filed. s/Smith, AAG<br>Proposed Order, filed. |
| 1/15/08 | ORDER, Jabar, J.<br>There being no objection to "Respondent's Motion to Enlarge Time for Filing the Brief of Respondent" it is hereby ORDERED that Respondent's motion is GRANTED. Respondent shall file its brief on or before January 26, 2008<br>Copies mailed to attys. of record. |
| 1/25/08 | Brief of Respondent, filed. s/Smith, AAG |
| 2/8/08 | Reply of Robert D. Moore, D.D.S., M.D. in Support of his Petition for Judicial Review of Final Agency Action, filed. s/Beaudin, Esq. |
| | Notice of setting for __4/8/08_____<br><br>sent to attorneys of record. |
| 4/8/08 | Hearing held with the Hon. Justice Joseph Jabar presiding.<br>James Belleau, Esq. for the Petitioner and Dennis Smith, AAG for the respondent.<br>Oral arguments made to the court. Court to take matter under advisement. |

| Date of Entry | Docket No. _____ |
|---|---|
| 4/18/08 | DECISION AND ORDER, Jabar, J.<br>The decision of the Maine Board of Dental Examiners is VACATED and REMANDED for a new hearing in front of a tribunal not susceptible to the risks of bias orunfairness articulated in this decision.<br>Copies to attys. of record.<br>Copies to repositories. |